**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MARK HART** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-2361** |
| **MARLIN GUSMAN (SHERIFF), EARL WEAVER (CHIEF), MS. T. COLE (COLONEL)** | **SECTION "H" (4)** |

**ORDER AND REASONS**

Before the Court is the plaintiff Mark Hart's **Motion for Leave to File First Amended Complaint (Rec. Doc. No. 20)**. The motion was notice for submission on December 30, 2015, and the defendants have not filed an opposition. The motion was referred to a United States Magistrate Judge to hear and determine pursuant to **28 U.S.C. § 636(b)(1)(A)** and **Local Rule 72.1(A)**.

**I.   Procedural Status of the Case**

The plaintiff, Mark Hart ("Hart"), was an inmate at the Elayn Hunt Correctional Center in St. Gabriel, Louisiana, at the time of the filing of the original *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlin N. Gusman, Orleans Parish Chief of Security Earl Weaver, and Colonel T. Cole. Hart alleged that his constitutional rights were violated beginning February 13, 2014, by the violent conditions in the Orleans Parish Prison system, which led to him being raped and assaulted by other inmates as a result of his cell placement within the prison and other actions of the prison officials.[1]   Counsel has enrolled on Hart's behalf.[2]

---

[1]The Partial Report and Recommendation, Rec. Doc. No. 12, pp. 1-4, provides the following summary of the facts alleged by Hart in the original complaint and *Spears* Hearing:

   Hart alleged that on February 13, 2014, he was booked into Orleans Parish Prison ("OPP") and placed in Tent-3. Hart stated that after it became apparent that he was a transgender, he was removed and placed in Tent-1 because it was allegedly a safer environment for a transgender person.

   Hart asserted that two weeks after being relocated to Tent-1, several inmates verbally harassed him by making sexual insults. He reported these incidents of harassment to various unidentified shift officers and that nothing was done. Hart further stated that he filed grievances and complained to Cole, but his complaints went unanswered. Hart alleges that he was placed on suicide watch because of stress caused by abuse from fellow inmates.

   Hart stated that, after being placed on suicide watch, he was moved to a 4-man cell in the "psychic ward." Hart alleged that he was interviewed by an unidentified nurse whom he told he was not suicidal but was willing to do

On September 23, 2015, the undersigned Magistrate Judge issued a Partial Report and Recommendation recommending that Hart's claims against Sheriff Gusman and Chief Weaver be dismissed with prejudice as frivolous and otherwise for failure to state a claim for which relief can be granted.[3]  The Court also recommended that the claims against Colonel Cole be allowed to proceed forward for further proceedings.  In making these recommendations, contrary to Hart's counsel's suggestions, this Court considered each of the claims in Hart's original complaint as

---

whatever necessary to escape the alleged sexual harassment from fellow inmates.  Hart alleged that after the interview, the unidentified nurse decided that he should see a doctor the next morning and be returned to general population.

Hart alleged that, after he was returned to general population in a different cell, he was confronted by inmate Keith Wilson ("Wilson").  Hart contended that Wilson noticed that he was a homosexual and began asking him questions.  Hart further contended that Wilson propositioned him several times to engage in sexual intercourse and each time Hart refused.  Hart stated that Wilson sat down on his bunk, put his hand under his smock, and began fondling his anal area.  Hart removed Wilson's hand and continued rejecting Wilson's sexual advances.  Hart further asserted that Wilson threw a blanket over his head and forcibly raped him.  Hart alleged that at this point he did not protest because in similar instances he was taught to not resist so that additional harm would not occur.

Hart alleged that an unidentified guard, while making his rounds, saw the alleged rape occurring and screamed to open the cell door.  Hart alleged that Wilson then stopped raping him and went to the unidentified guard.  Wilson then told the guard that he should have warned him that he was coming.  Hart stated that the guard then removed Wilson from the cell.  Hart alleged that Wilson's comment to the guard implied that Wilson and the guard had some type of understanding about similar situations.  Hart claimed that he explained to the unidentified guard that Wilson raped him, but the guard attempted to pressure him into saying that the alleged rape was consensual.

Hart also alleged that after the rape incident, he was taken to medical where he spoke with Detective Nettles ("Nettles"), who took his statement.  Hart further alleged that he was taken to University Hospital where he submitted to a rape analysis kit and was subsequently returned to suicide watch and placed in a different cell.

Hart further alleged that, later that night, he was interviewed by Maggie Yates ("Yates"), who took his statement regarding the cell transfers and rape.  Hart contended that Yates was influential in his transfer from suicide watch to protective custody.

Hart alleged that after he was placed in protective custody, he requested a transfer to another part of the jail to be close to a family member to help alleviate the traumatic effects of the rape.  Hart claimed that the request was denied, and he was placed back in Tent-1.  He claimed that Weaver assured that he would be safe there because of 24-hour security.  Hart further claimed, however, that before 24-hours passed, he was involved in a fight with an inmate who had harassed him when he was previously in Tent-1.  Hart alleged that Deputy Cole documented the incident and the inmate was moved to another area.

Hart further alleges that he was taken to medical to be examined due to the fight and that he later found out that Cole released his medical history to other inmates in Tent-1.  Hart claims that Cole told the inmates that he was HIV positive.  Hart further claims that after he returned to Tent-1 from medical, he was ambushed by three inmates but this fight was not documented.

Hart also asserts that he filed grievances complaint with internal affairs about the rape and other incidents and, although he was visited by internal affairs, internal affairs took no further action beyond the visit.  Hart further asserts that Nettles later came to him and confirmed that Wilson eventually confessed to the rape.

[2]Rec. Doc. Nos. 13, 22.

[3]Rec. Doc. No. 12.

modified and supplemented at the *Spears*[4] Hearing held on November 26, 2014.[5] The fact that the digital recording could not be located at the time the Partial Report and Recommendation was ultimately issued did not prevent the Court from affording Hart every benefit of his testimony at the hearing.

Hart through counsel filed objections on October 14, 2015, asserting that new and additional factual information and legal theories are available which should prevent dismissal of the claims against Gusman and Weaver. However, the original complaint as supplemented by the *Spears* Hearing testimony no-less is frivolous as presented with respect to Sheriff Gusman, who was named in the caption with no allegations against him other than his role as supervisor over OPP, and Chief Weaver, who also was named as a supervisor without any allegation to create the limited supervisory liability recognized under § 1983, all for the reasons assigned in the prior Partial Report and Recommendation.

Nevertheless, before the Court at this time, is the Motion for Leave to File First Amended Complaint (Rec. Doc. No. 20) which was filed by Hart's newly enrolled counsel on December 9, 2015. The United States Court of Appeals for the Fifth Circuit has repeatedly recognized that, under Fed. R. Civ. P. 15(a), an amended complaint <u>supersedes</u> the original complaint, and the original complaint has no legal effect except to the extent that it is incorporated by reference into the amended complaint. *See Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (noting that Fifth

---

[4]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis for the claims. The information received is considered to an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[5]Rec. Doc. No. 10. The plaintiff was sworn prior to testifying and the hearing was digitally recorded. Although the hearing was recorded, the recording could not be located. However, the facts indicated by Hart are sufficient to render a recommendation.

Circuit jurisprudence consistently reminds that an amended complaint supersedes the original complaint); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."). Hart's proposed Amended Complaint makes no such reservation of the allegations or arguments in the original *pro se* complaint and therefore will, if leave is granted, supersede the original *pro se* complaint. Thus, if leave is granted to Hart to file the proposed Amended Complaint, the matters pending as to the original *pro se* complaint before the District Judge through the Partial Report and Recommendation and related objections will be rendered moot.

## II.     Standards of Review

Rule 15(a) of the Federal Rules of Civil Procedure governs the amendment of pleadings. It provides that leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). This and other federal rules "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v Gibson*, 355 U.S. 41, 48 (1957).

Rule 15(a) and (d) evince a liberal policy and a motion to amend should not be denied absent a substantial reason to do so. *See Jacobsen v Osborne*, 133 F.3d 315, 318 (5th Cir. 1998). However, leave to amend is by no means automatic. *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993); *Addington v. Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663, 666 (5th Cir. 1981). The decision to grant or deny a motion for leave to amend lies within the sound discretion of the trial court. *Addington*, 650 F.2d at 666.

The Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981).  Leave to amend should be denied when doing so is required for fairness to the party opposing the motion.  *Zenith Radio Corp. v. Hazeltime Research, Inc.*, 401 U.S. 321 (1971).

### III.   Discussion

In the proposed Amended Complaint (Rec. Doc. No. 20-2), Hart seeks to assert claims pursuant to 42 U.S.C. § 1983 and state law against Sheriff Gusman, Chief Weaver, Colonel Cole, and two additional deputies, Deputy Joseph and Deputy Short, each in their individual and official capacities.  Hart also includes reference to "Other as Yet Unknown Defendants."  Hart seeks therein compensatory and punitive damages, costs, and attorneys' fees.  Each of the claims asserted appear to arise out of the same or similar allegations asserted by Hart in the original complaint (and at the *Spears* Hearing) although bolstered by legal arguments and specific, additional factual allegations about the dangers in the prison, events, and conversations not previously presented.  Hart also now identifies Deputy Joseph as the guard who allegedly interrupted the rape committed upon him by inmate Keith Wilson.  He also identifies Deputy Short as the deputy who failed to protect him from the attack by other inmates upon his return to Tent-1.

Considering the Rule 15(a) factors above, and having thoroughly reviewed the record and the proposed Amended Complaint, the Court finds that Hart has not sought amendment in a dilatory manner or in bad faith.  As with many *pro se* cases, it is of benefit to both the Court and the parties when newly enrolled counsel can present a cohesive and cogent complaint to which the defendants

can respond.  The Court also can find no undue prejudice by allowing the amendment, especially in light of the fact that the defendants have not filed a written opposition to the plaintiff's motion or otherwise provided any cause not to allow the amendment.  Finally, while the Court does not comment on the merits of the claims or on any defense thereto, the proposed Amended Complaint does not at this time appear to be futile.  Based on the current record, the claims appear to relate to the allegations asserted by Hart in the original complaint and provide additional factual allegations to support those claims and the newly added legal theories of liability, especially those of policy and training now asserted as to Gusman and Weaver.

The Court has considered the often-inflammatory references to past violence, events, and other problems within OPP, which occurred <u>before</u> Hart's arrest and <u>before</u> the episodic events involving <u>this</u> plaintiff, and will allow their inclusion in the Amended Complaint to the extent they may be considered relevant to the policy and training claims now asserted.  Nevertheless, with no opposition from the defendants and liberal policy of amendment under Rule 15(a), the Court finds that Hart is entitled to file the proposed Amended Complaint.  Because relief is available under Rule 15, the Court need not address Hart's alternative arguments regarding joinder of parties under Fed. R. Civ. P. 19 and 20.  Accordingly,

**IT IS ORDERED** that Hart's **Motion for Leave to File First Amended Complaint (Rec. Doc. No. 20)** is **GRANTED**.

New Orleans, Louisiana, this 26th day of January, 2016.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**